## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| **XCENTRIC VENTURES, LLC**, an Arizona limited liability company; and **ED MAGEDSON**, an individual, | : : : | No. 5:15-cv-04008-LTS |
| Plaintiffs, | : : : : : | **MOTION TO COMPEL THE PRODUCTION OF EMAILS, RESPONSE TO MOTION FOR PROTECTIVE ORDER** |
| vs. | : : | |
| **BEN SMITH**, in his individual capacity as Sac County Attorney, | : : : : | |
| Defendant. | : | |

### Introduction: Non-Party, Shawn Richeson, Deletes Subpoenaed Files

This is a Motion to Compel the production of materials pursuant to a subpoena and a response to non-party Shawn Richeson's recent motions (Documents 101, 102 and 103).

Shawn Richeson is a witness in this case. In this case, Ben Smith used his authority as an elected official to maliciously investigate and intimidate the operator of the Ripoff Report, Xcentric Ventures, and its manager and contributors, to chill their First Amendment rights. During its civil discovery, Plaintiff sought communications between Richeson and Smith, among other relevant communications. Instead of objecting to Plaintiff's subpoena, Richeson simply claimed all the discoverable documents had been deleted. As this motion will demonstrate, Richeson' statement is untrue and is a continuation of past similar misconduct.

By failing to timely object, Richeson waived any objections to production he might have had. Since Richeson claims he has deleted the discoverable files, this Court should compel Richeson to produce his computers for inspection and he should be sanctioned for

his misconduct. Richeson's motions should be denied as frivolous and fees for necessitating this response awarded against him.

> **Background: Sac County Attorney Ben Smith Maliciously Investigates And Attempts To Intimidate The Ripoff Report's Operators And Contributors.**

This is a First Amendment case about protection of the media. In this case, the media is Ripoff Report – a complaint board where people can post complaints about businesses or the government. To date there have been approximately 2,102,390 posts on Ripoff Report. The Ripoff Report relies on Justice Brandies' famous axiom: "If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, **the remedy to be applied is more speech, not enforced silence**." *Whitney v. California*, 274 U.S. 357, 377, 47 S. Ct. 641, 649, 71 L. Ed. 1095 (1927) (emphasis added).

If there is a report that someone feels is unfair, that person has the right to add a rebuttal to the report to set the record straight at no charge. Unfortunately, there are some who cannot tolerate any criticism. They want to enforce silence. Since Ripoff Report began, a few disgruntled people who have had reports filed about them have become apoplectic.

To drive Ripoff Report out of business, its enemies have employed a variety of schemes. For instance, Michael Roberts, a friend of prosecutor Ben Smith, has created websites and videos alleging that Ripoff Report engages in criminal activity. These groups attack Ripoff Report, their lawyers and even its customers.

> **Sac County Attorney Ben Smith Uses His Position To Silence Ripoff Report**

Prosecutor Ben Smith was criticized on Ripoff Report. In a campaign to silence his critics, he joined forces with Michael Roberts and John Brewington, long-time opponents of Ripoff Report who had publicly threatened to destroy the website. Both Brewington and Roberts participated in writing an affidavit in support of a search warrant accusing Xcentric and Magedson of serious crimes. Smith then disclosed the affidavit to the public and Brewington, Roberts, and others widely disseminated it. Brewington indicated that he had intimate knowledge of Ben Smith's warrant affidavit, when he tweeted on June, 8,

2014, before the affidavit's issuance and release to the public: "Gentle reader, I now present you with just a very small portion of what I know and what is going to come. Keep in mind the evidence hasn't been made public yet, but I have permission to release this." He then accompanied his tweet with some of the allegations that would be made public in the warrant affidavit. On the day of the affidavit's issuance and release, Brewington simply tweeted "the storm is here."

After the search warrant had been issued, Ben Smith made the affidavit public and shared the subpoenaed materials with Ripoff Report's detractors, even though it contained confidential information that he had only been able to access using his subpoena power as a public official. The affidavit contained references to Magedson's personal and business email correspondence, including privileged attorney-client communications. Smith also used privileged and illegally obtained information to support a frivolous bar complaint against Ripoff Report' attorneys. Additionally, Smith publicly accused Ed Magedson of a number of felonies, including extortion and witness tampering. He did all of this to silence critical political speech.

In publicizing and sharing private information he obtained as Sac County Attorney, Ben Smith facilitated various anti-Ripoff Report campaigns around the county and globe. One of those campaigns was Shawn Richeson's. Richeson worked for Ben Smith in his efforts to persecute Ripoff Report by prosecuting its operator.

**Shawn Richeson's Emails Contain Highly Relevant, Discoverable Information**

Shawn Richeson runs the *The Ripoff Report Revolt* Facebook Page and *Operation Bleed Green* on Twitter, groups that seek to destroy Ripoff Report by saddling it with the expense of multiple frivolous lawsuits. He is also a computer business owner in Killeen, Texas with a long history in the courts, having brought over 60 civil cases in his lifetime and having been convicted of felony theft by deception along with other related crimes. (Richeson Depo. pg. 85). Richeson developed his animosity for Ripoff Report when customers reported on the website that his business had engaged in fraudulent behavior. (Richeson Depo. pg. 28). In response, Richeson embarked on a campaign to harass Ripoff

Report its associates and its attorneys by filing frivolous lawsuits against them. (Richeson Depo. pg. 34-35).

Ben Smith relied on Richeson's expertise with technology during Smith's extensive and unwarranted investigation of Ripoff Report and Ed Magedson. Richeson admits that Ben Smith employed him to "figure[e] out who's behind the keyboard" writing posts on Ripoff Report. (Richeson Depo. pg. 125). Ben Smith confirmed that he employed Richeson as an investigator in a sworn affidavit:

> 2. In the last two years, at various times, Shawn Richeson & his Company, Click a Nerd, assisted my office by providing the following technical services related to a criminal prosecution in Sac County, Iowa:
>
> > a. Tracing IP addresses
> > b. Identifying browser forensics
> > c. Identifying operating systems used to create internet postings
> > d. Identifying server locations of internet postings
> > e. Deciphering URL search strings
>
> 3. As a result of his aforementioned assistance, Shawn Richeson was listed as a witness for the prosecution in *State of Iowa v. Darren Meade*, Sac County District Court, Case No. FECR012634.

(Affidavit of Ben Smith 11/3/15 at **Exhibit 1**) (Smith Depo. pg. 89).

At his deposition on February 29, 2016, Mr. Richeson was subpoenaed to bring:

1. Copies of any and all contracts between you or any of your companies and Ben Smith, John Brewington, Darren Meade, Michael Roberts or Sac County for the time period January 1, 2010 to the present.

2. Copies of any and all agreements between you or any of your companies and Ben Smith and John Brewington, Darren Meade, Michael Roberts or Sac County that mention, or reference or have anything to do with the Ripoff Report or Ed Magedson

3. Copies of any and all communications (whether letter, memo, email, electronic, audio or otherwise) for the time period January 1, 2010 to the present that mention, or reference, or have anything to do with the Ripoff Report or Ed Magedson, between you and Ben Smith, John Brewington, Darren Meade, Michael Roberts, Dr. Connelly, Siamack Yaghobi, Chris Ingle, Jack Delehanty, or Sac County.

4. Copies of any and all work product you or any of your companies produced for Ben Smith or any employee, agent or representative of Sac County regarding anything to do with the Ripoff Report or Ed Magedson for the time period January 1, 2010 to the present.

5. Copies of any and all materials you received from Ben Smith, John Brewington, Darren Meade, Michael Roberts or Sac County regarding anything to do with the Ripoff Report or Ed Magedson.

6. Copies of any and all materials (whether letter, memo, email, electronic, audio or otherwise) related to the website www.ripoffreportsucks.org and its interaction with Ripoff Report's customers or Ed Magedson;

7. Copies of any and all materials (whether letter, memo, email, electronic, audio or otherwise) regarding the Ripoff Report or Ed Magedson that you possess for the time period January 1, 2010 to the present.

8. Copies of any and all materials involving contact you have had with customers of the Ripoff Report for the time period January 1, 2010 to the present.

(Ex. 1 To Plaintiff's Subpoena To Produce Documents, Information, Or Object Or To Permit Inspection Of Premises In A Civil Action Delivered to Shawn Richeson 2/29/2016).

Instead, Richeson brought nothing. Not one shred of paper, not one computer file. He pays extra to Google to have 100 Gigabytes of storage and yet he claims that he does not save any emails (although he makes pdfs of "important ones"). (Richeson Depo. pg. 7).

Richeson did not file an objection to Plaintiff's subpoena, he just claimed that he had deleted the subpoenaed files. Because Richeson pays for so much storage, it is likely that he has discoverable files stored on his computers or in his email accounts.

5

**Shawn Richeson Abuses Legal Process To Satisfy His Vendetta Against The Ripoff Report**

Richeson runs a Facebook page called *Ripoff Report Revolt*, which Michael Roberts created and turned over to Richeson. (Richeson Depo. 55-56). The Ripoff Report Revolt website promotes the slogan "Make Them Bleed Green." The idea behind "Make Them Bleed Green" is to file frivolous lawsuits, or frivolous motions in extant lawsuits, so that mounting legal fees would strangle Xcentric and force it to go out of business. Operation Bleed Green also promotes frivolous lawsuits on Twitter.

Richeson, has filed frivolous lawsuits against Ripoff Report and others associated with Ripoff Report including Xcentric's outside counsel Jaburg Wilk PC, dismissing the cases at the latest possible opportunity so that his baseless suits would do the most possible harm, and so that he could gather information in discovery. Recently he sued Adam Kunz, in house counsel for Xcentric in order to abuse the discovery process to learn more about the instant case. *See* Richesons' Motion For Protective Order And Motion To Quash Subpoena And Motion For Costs & Request For Hearing.

Richeson's penchant for filing baseless lawsuits reaches back further than his vendetta against Xcentric. Included in the over 60 civil cases he has filed, Richeson sued his neighbors when their two-year-old child damaged his sprinkler in order to drive the family out of the neighborhood. (Richeson Depo. pg. 53). He sued a pool company when rain delayed their construction of his pool. (Richeson Depo. pg. 81). He even sued a friend, accusing that friend of raping his daughter, later withdrawing the claim. (Richeson Depo. pg. 100).

Richeson has attempted to intervene in the instant litigation, claiming that he could provide evidence against Ripoff Report and Magedson. Rejecting his intervention, this Court found that Richeson's motions in this case were "frivolous and improper efforts to interject Richeson's unrelated grievances against plaintiffs and their counsel into this lawsuit… [and] nothing but the misappropriation of this court's docket as a public forum to air his attacks." (Order, Doc. No. 66). Richeson has not obeyed the Court's order. On

6

November 4, 2016, he filed three duplicate motions entitled Motion For Protective Order And Motion To Quash Subpoena And Motion For Costs & Request For Hearing.

## Shawn Richeson Evades A Proper Subpoena

On Feb 29, 2016, Plaintiffs served a subpoena *duces tecum* for Richeson to attend a deposition on March 21, 2016, and to produce the communications in question.

At his deposition, Richeson claimed that he had deleted from his computer and online email accounts all communication with every party listed on the subpoena. (Richeson Depo. pg. 9). When Plaintiff asked Richeson to open his email account at the deposition, Richeson gave consent. However, when Plaintiff's counsel attempted to access the account it was blocked because Richeson had configured his Google Email account to require verification of identity through his phone whenever a new computer attempted to access the account. Despite the subpoena *duces tecum*, Richeson failed to bring his own computer or even his mobile phone to the deposition location. (Richeson Depo. pg. 13). While these circumstances were suspicious in the least, they also show that Richeson consented to Plaintiff's inspection of his computer.

Richeson has not raised any objections to the production of his emails. He has merely asserted that they are unavailable for production due to their deletion. Thus, this court only needs to address how to properly require Richeson to produce materials responsive to the subpoenas, including evidence of deletion, or remnants that remain after deletion.

Richeson has a habit of deleting subpoenaed files and refusing to turn them over without filing proper objections. In 2014 The United States Bankruptcy Court of the Western District of Texas sanctioned Richeson for deleting an audio recording a party had subpoenaed. The court found:

> 9.    Mr. Richeson failed to timely or properly object to producing the documents and/or recordings responsive to the Subpoena

10. Mr. Richeson willfully and intentionally failed to comply with the Subpoena.

11. Mr. Richeson willfully and intentionally destroyed the John Fisher audio record-
ings.

(Ex. 3, Order of Sanctions Against Shawn Richeson pg. 8-9).

Richeson has repeated the same behavior in this case. His history of disregarding his legal duties shows an utter disrespect for the legal process. Production of his computers for inspection should be compelled, and he should be sanctioned.

**Shawn Richeson Files A Frivolous Motion After The Court Forbids Further Filings**

Richeson's Motion For Protective Order And Motion To Quash Subpoena And Motion For Costs & Request For Hearing, which Richeson inexplicably filed three times, makes false and unsupported claims that Plaintiff's counsel has attempted to intimidate him, has threatened his family, and has attempted to use this case to improperly discover information about other cases. Richeson even falsely alleges, without support, that Adam Kunz, Xcentric Venture's in house counsel, will be indicted in Texas (though for what crimes, Richeson does not say). This motion, with its wide range of unsupported and vicious allegations is a prime example of Richeson's modus operandi: "make them bleed green." Richeson does not need support for the allegations in his motions. He does not even need to win any relief resulting from his motions, he only needs to force Xcentric to incur ever-mounting legal expenses. Richeson's motion should be denied in its entirety.

Additionally, Richeson has insisted on special conditions for his upcoming deposition. He seeks to limit the deposition to four hours, and to disallow anyone aside from Plaintiff's counsel from listening. Additionally, Richeson wants to bring "law enforcement" to "protect [him] and [his] family." (Email 10/24/2016 **Exhibit 2**). Plaintiffs have conducted a deposition with Richeson. There were no suggestions of violence or danger at that deposition. Plaintiffs have never made any threats before or since. No one has asked Richeson to bring his family to the deposition. Richeson's grown children likely have their own lives to attend to. While Plaintiffs have no objection to Richeson bringing law enforcement, the request is nothing but another defamatory comment against Plaintiffs

and their counsel. It is puzzling that Richeson would perceive a threat to his safety at the deposition, as all opposing counsel will attend via video link. Richeson's deposition will be public, so his demand that only counsel listen to the deposition is ineffectual. Richeson also refuses to travel the 60 miles from his home in Killeen, Texas to Waco, Texas for his deposition. As Plaintiff and Defense counsel are attending the deposition via video link, Richeson must travel to Central Texas Litigation offices in Waco, Texas where the video link can be made.

**Plaintiff's Request**

a. Plaintiff moves the court to issue an order permitting plaintiff to create mirror images of Richeson's computer hard drives, and to be granted access to Richeson's online email accounts. Plaintiff will bear the costs of the mirror imaging and of any data recovery actions.

b. Plaintiff moves this Court to require Richeson to travel 60 miles to attend his deposition in Waco, Texas, as travel of less than 100 miles is compulsory under the Federal Rules. Fed. R. Civ. P. 45(c)(1)(A); 45(c)(2)(A). Additionally, Plaintiff moves this Court to require Richeson to make himself available for the mandated deposition time of up to seven hours, as needed. Fed. R. Civ. P. 30(d)(1).

c. Plaintiff requests that this Court deny Richeson's Motion For Protective Order And Motion To Quash Subpoena And Motion For Costs & Request For Hearing.

ARGUMENT

**1. Plaintiff Is Entitled To Discover Deleted Emails**

Plaintiff is entitled to obtain the same discovery from non-parties under Rule 45 as it would be able to obtain from parties under Rule 26 and 34, as long production of the discovery does not unduly burden the non-party. Fed. R. Civ. P. 45, 26, 34; *Progressive Cas. Ins. Co. v. F.D.I.C.*, 49 F. Supp. 3d 545, 563 (N.D. Iowa 2014) Fed. R. Civ. P. 45 *Advisory Committee Notes* (*"The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."*).

Under Rule 34, a party is entitled to "inspect…any… electronically stored information" if it is "within the scope of Rule 26(b)". Fed. R. Civ. P. 34(a)(1)(A).

Under Rule 26(b), Plaintiff is entitled to discover anything "regarding any nonprivileged matter that is relevant to any party's claim." Fed R. Civ. P. 26(b). If a party objects to a request for production of discovery materials, that party must serve an objection on the party seeking discovery. Fed. R. Civ. P. 45(d)(2)(B).

No party had objected, and Richeson has not objected to the discovery in question on privilege or any other grounds, so if the materials sought are relevant, they are discoverable.

## 2. The Emails Contain Relevant Information Under Rule 26(b).

The emails and other communications in question are likely to show that Ben Smith shared confidential, attorney-client privileged, and illegally obtained information about Xcentric Ventures and Magedson with Shawn Richeson.

The emails will also likely show that Richeson encouraged Defendant to violate Plaintiff's constitutional rights due to their vendetta against Xcentric. They may also show that Smith encouraged Richeson to continue his attacks.

In his deposition, Richeson repeatedly acknowledged that he had been involved with groups, including Michael Roberts and others, in opposition to Ripoff Report such as *RipoffReportSucks.org* and *Ripoff Report Revolt* on Facebook. (Richeson Depo. pg. 55). He also admitted that he had personally sent emails to Ed Magedson, Adam Kunz, Plaintiff's attorney, Joel Robbins, and others containing what he termed "linkbait," which would deceive email receivers into clicking on a link that caused their computers to reveal identifying information about users. (Richeson Depo. pg. 46). Richeson even admitted to telling Ben Smith that Ed Magedson had molested children, despite having no evidence to support the accusation. (Richeson Depo. pg. 65). Richeson participated in efforts to distribute and publicize Ben Smith's false accusations against Magedson and Ripoff Report through social media and file sharing.

These activities demonstrate that Richeson was a participant in a group that was privy to Ben Smith's leaks of privileged, confidential, and illegally obtained information

about Ripoff Report. Ben Smith's leaks are relevant to Plaintiff's case, because Plaintiff is pursuing causes of action against Smith that allege he abused the prosecutorial process and violated Plaintiff's constitutional rights by obtaining information about Plaintiff through search warrants and criminal subpoenas, and then illegally spreading that information to people who hated Plaintiff. Communication could also contain Defendant's relevant statements about criminal prosecutions against Ed Magedson and others involved with Ripoff Report.

## 3. Plaintiff Has The Right To Inspect Richeson's Computer; Richeson Has Waived Any Claims Of Privilege

Richeson admitted that he deleted email communication with Ben Smith and others. Richeson does not contend that Plaintiff does not have a right to access his email or computer files, he has simply obstructed discovery.

"[I]t is a well-accepted proposition that deleted computer files, whether they be e-mails or otherwise, are discoverable." *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002). When otherwise discoverable electronic data has been deleted from a storage device, the discovering party can employ an electronic discovery expert to recover the data. *Id.* (when defendants' computer equipment may have relevant information which has been deleted, plaintiff's computer expert can make a mirror image of defendants' hard drives to recover discoverable data).

Recovery of deleted data from a defendant's computer proceeds in three steps. *Ameriwood Indus., Inc. v. Liberman*, 4:06CV524-DJS, 2006 WL 3825291, at *5 (E.D. Mo. Dec. 27, 2006), *as amended on clarification*, 4:06CV524-DJS, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) (memorandum). First, the plaintiff selects a computer forensics expert who creates a mirror image of the defendant's hard drive and writes a report detailing his actions. *Id.* Second, the expert extracts all available documents from the hard drive, and delivers them to the defendant's attorney. *Id.* Third, the defendant's attorney reviews the documents and sends the appropriate, nonprivileged documents to the plaintiff; any privileged documents would be placed on a privilege log. *Id*; *see also Antioch Co.*, 210

F.R.D. at 652-653 (discussing a similar protocol); *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 643 (S.D. Ind. 2000) (using a similar protocol).

Richeson made clear that he is comfortable with Plaintiff's examination of his computer when he consented to Plaintiff's counsel's inspection of his Google Email at deposition. The fact that Richeson expressed his willingness to hand over the emails, and did not assert that they were privileged, waives any future assertion of privilege that he may argue. *Rabushka v. Crane Co.,* 122 F.3d 559, 565 (8th Cir.1997); *Etten v. U.S. Food Serv., Inc.,* C05-0083, 2006 WL 474748, at *2 (N.D. Iowa Feb. 27, 2006); *see also Freeman v. Bee Mach. Co.,* 319 U.S. 448, 459, 63 S. Ct. 1146, 1151, 87 L. Ed. 1509 (1943) (holding that venue, like other privileges "may be lost by failure to assert it seasonably").

Richeson is also not a party, and so it is unlikely that genuine issues of privilege will inhibit discovery. Furthermore, Richeson has no attorney, so following the usual protocols would place discovery decisions entirely in his untrained discretion. For these reasons, a modified version of this protocol is appropriate.

Plaintiff asks this Court to compel Richeson to allow mirroring of his hard drive. The mirror image should then be turned over to Plaintiff's counsel.

As Richeson is a computer expert, this Court should enter an order allowing mirroring of his hard drives promptly. Otherwise, Richeson may damage or delete the discoverable data in such a way that it cannot be recovered, as he had done in the past.

**4. Plaintiffs Have The Right To Conduct The Continued Deposition At The Location Of Their Choosing, Within 100 Miles Of The Richeson's Home;**

Travel of less than 100 miles is compulsory for properly subpoenaed deponents and for those who are ordered to deliver documents pursuant to a subpoena *duces tecum* under the Federal Rules:

> (1) For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>
> > (A) **within 100 miles** of where the person resides, is employed, or regularly transacts business in person; or

Fed. R. Civ. P. 45(c)(1)(A)(emphasis added);

(2) For Other Discovery. A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place **within 100 miles** of where the person resides, is employed, or regularly transacts business in person; and

Fed. R. Civ. Proc. 45(c)(2)(A)(emphasis added).

Richeson refuses to travel the 60 miles from Killeen, Texas and Waco, Texas. Plaintiff requires Richeson to make the short trip because the deposition will be taken via video link, with counsel for both Defendant and Plaintiff participating remotely. Thus, the deposition must be taken at the offices of Central Texas Litigation, who will operate the video link software. Richeson has no legal basis for refusing to travel, and must do so.

**5. Plaintiff Served A Proper Subpoena *Duces Tecum* On Shawn Richeson, Richeson, In His Motion To Quash, Uses The Court As A Forum To Air Unrelated Grievances As The Court Has Forbidden Under Threat Of Sanction**

This Court has already forbidden Richeson from using court filings to "interject… unrelated grievances against plaintiffs and their counsel into this lawsuit." (Order, Doc. No. 66). The Court explicitly instructed Richeson that upon "any further attempt to misuse this Court's docket or process, he will be required to appear in person and show cause as to why he should not be sanctioned." *Id.*

Unfortunately, the Court's direct order was not enough to prevent Richeson from filing another wide ranging motion with baseless allegations. Richeson's motion, which he filed three times in duplicate, includes the following irrelevant and unsupported accusations: (1) Adam Kunz is going to be indicted in Texas for unspecified crimes, (2) Plaintiffs' counsel has "play[ed] a part in the furtherance of [an unspecified] crime or fraud," and (3) somehow, the fact that Richeson has filed a frivolous lawsuit against Mr. Kunz in Texas creates a conflict of interest for Plaintiff's counsel in the instant case. *Motion For Protective Order And Motion To Quash Subpoena And Motion For Costs & Request For Hearing*.

Richeson's motion also tells the story that Plaintiff sought to intimidate Richeson and his family at his deposition. The deposition transcript shows the truth: Plaintiff's

attorney asked questions about Richeson's family because there is reason to believe Richeson divorced his wife to avoid creditors. Richeson continues to live with his now ex-wife despite the divorce. (Richeson Depo. pg. 79). Other questions about Richeson's family were relevant to past lawsuits, such as Richeson's lawsuit against a friend who he accused of raping his daughter. (Richeson Depo. pg. 97). Plaintiff's counsel's questions about Richeson's family were intended to investigate Richeson's history with frivolous lawsuits, and develop pattern evidence regarding Richeson's aggressive abuse of the courts. They were not threats of any sort.

Richeson is a vexatious litigant who has been told, that "just about every time [he] file[s] a lawsuit," it is frivolous. Still he admits to filing over 60 lawsuits. (Richeson Depo. pg. 52). Richeson uses lawsuits as a weapon. His organization, Operation Bleed Green, encourages critics of Ripoff Report.com to file frivolous lawsuits against Xcentric Ventures so that it incurs legal fees. Operation Bleed Green's purpose is to put Xcentric Ventures out of business by forcing them to pay so much in legal expenses that they cannot operate their business. Richeson's motion to quash a lawful subpoena is a continuation of this behavior, and it should be denied. Further, this Court should impose whatever sanction it deems appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court GRANT its Motion To Compel in the manner stated above and deny Richeson's motions.

Respectfully submitted this 18th day of November, 2016.

| | |
|---|---|
| /s/ Joel B. Robbins<br>Joel B. Robbins, AZ Bar #011065 *<br>ROBBINS & CURTIN, PLLC<br>301 E. Bethany Home, #B-100<br>Phoenix, AZ   85012<br>Phone: 602-285-0100<br>Fax: 602-265-0267<br>Email: joel@robbinsandcurtin.com<br>Attorney for Plaintiffs<br>(*admitted *pro hac vice*) | /s/ Angela L. Campbell<br>Angela L. Campbell AT# 0009086<br>DICKEY & CAMPBELL LAW FIRM, PLC<br>301 East Walnut Street, Suite #1<br>Des Moines, IA   50309<br>Phone:  515-288-5008<br>Fax:  515-288-5010<br>E-mail:  angela@dickeycampbell.com<br>Local Counsel for Plaintiffs |
| /s/ Maria Crimi Speth<br>Maria Crimi Speth*<br>JABURG & WILK, P.C.<br>3200 North Central Avenue, #2000<br>Phoenix, AZ   85012<br>Phone:  602-248-1089<br>Fax:  602-248-0522<br>E-mail:  mcs@jaburgwilk.com<br>(*admitted *pro hac vice*) | |

CERTIFICATE OF SERVICE
I hereby certify that on November 18, 2016, I electronically filed this document with the Clerk of the Court using the ECF system which will serve it on the appropriate parties.

Additionally, I certify that I served a copy by U.S. Mail on the following parties not registered with the Court's ECF system:

(N/A)

By ___/s/  Julie W. Molera___

**EXHIBIT 1**

# AFFIDAVIT

By signing this document I, Benjamin Smith, state under oath that the following statements are true:

1. I am the duly elected County Attorney (District Attorney) in and for Sac County, Iowa.

2. In the last two years, at various times, Shawn Richeson & his Company, Click a Nerd, assisted my office by providing the following technical services related to a criminal prosecution in Sac County, Iowa:

   a. Tracing IP addresses
   b. Identifying browser forensics
   c. Identifying operating systems used to create internet postings
   d. Identifying server locations of internet postings
   e. Deciphering URL search strings

3. As a result of his aforementioned assistance, Shawn Richeson was listed as a witness for the prosecution in *State of Iowa v. Darren Meade*, Sac County District Court, Case No. FECR012634.

STATE OF IOWA      )
                   ) SS
SAC COUNTY         )

I, Benjamin Smith, do on oath and affirmation state that I have read the foregoing Affidavit and know the contents thereof, the statements are based upon my information and belief and are true and correct as I verily believe.

_____
Benjamin Smith
Sac County Attorney

Sworn to and subscribed to before me by Benjamin Smith on November 3, 2015.

_____
Notary Public

K W McCLURE
Commission Number 727876
MY COMMISSION EXPIRES
APRIL 12, 20___

**EXHIBIT 2**

| | |
|---|---|
| **From:** | Shawn Richeson <admin@clickanerd.net> |
| **Sent:** | Friday, October 21, 2016 1:39 PM |
| **To:** | Cricket Bourget; Kristopher Madsen; adam@ripoffreport.com; Joel Robbins; ed@ripoffreport.com |
| **Subject:** | MAGEDSON-v-SMITH - IOWA - RICHESON 2ND DEPOSITION |

Dear Mrs. Bourget,

As promised, I will make myself available for deposition at the Shilo Inn in Killeen Texas.
The same place, network and board room as my April 5th 2017 deposition.

DEPOSITION DATE / TIME
FRIDAY - JANUARY 13th 2017 at 1:00 PM CST

NO - I am not willing to travel to Waco
NO - I am not willing to spend more than (4) more hours
YES - You may do it through video-link
YES - You may do it in person
YES - You may videotape it

As I said, I will be bringing law enforcement with me this time to protect me and my family.

As I said, NO ONE except Joel & Kris and their staff may listen in.

If there is any attempt to vary from those terms, I will move to quash and get the Judge in on it.

Respectfully,
--
Shawn Richeson
Senior Digital Forensics Expert
1906 Twilight Drive
Killeen TX 76543
(254) 230-9311 - Work
www.clickanerd.com
www.paypal.me/clickanerd

**EXHIBIT 3**



The relief described hereinbelow is SO ORDERED.

Signed February 19, 2014.

_____
Ronald B. King
United States Chief Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| In re:<br><br>JERRY W. SCARBROUGH,<br><br>Debtor. | Case No. 12-60683-RBK<br>Chapter 7 |
| HELEN PURSER, SUE E. PURSER<br>A/K/A SUE E. VAN ZANTEN, GARY W.<br>PURSER, JR., JOANN M. PURSER, AND<br>ELIZABETH TIPTON,<br><br>*Plaintiffs*,<br><br>v.<br><br>JERRY W. SCARBROUGH,<br><br>*Defendant*. | Adversary Proceeding No. 12-06031-RBK |

### ORDER OF SANCTIONS AGAINST SHAWN RICHESON

On February 4, 2014, and again on February 12, 2014, came for consideration Plaintiffs'

Motion to Compel Production and Motion for Contempt (the "Motion to Compel") against

Page 1

Shawn Richeson ("Mr. Richeson"), and, after considering the Motion to Compel, responses thereto, oral argument, sworn testimony, and other evidence on file with the Court, the Court rules that the Motion to Compel should be GRANTED IN PART, and DENIED IN PART.

IT IS THEREFORE ordered that, based on the Findings of Fact and Conclusions of Law, below, Mr. Richeson is hereby sanctioned $4,700.00, payable to "*Haley & Olson, P.C. IOLTA*" for the benefit of the Plaintiffs in the above-styled and numbered cause.

Mr. Richeson will have thirty (30) days from the date of this Order to remit payment by cashier's check, care of Plaintiffs' counsel, Joshua J. White, 510 North Valley Mills Drive, Suite 600, Waco, Texas 76710. Failure to comply with this Order may result in additional sanctions and contempt of court.

## FINDINGS OF FACT

1.  On January 13, 2014, the Purser Family served its Subpoena to Testify at a Deposition in an Adversary Proceeding on Mr. Richeson (the "Subpoena").[1]

2.  The Subpoena commanded Mr. Richeson to appear for deposition on January 18, 2014 (the "Deposition").[2]

3.  The Subpoena also required Mr. Richeson to produce the following documents, electronically stored information, and/or objects:

    a.  the entirety of all recorded conversations within your possession, control, or access to which you are a party and any of the following persons are also a party: Helen Purser, Sue E. Purser a/k/a Sue E. Van Zanten; Gary W. Purser, Jr. ("Bubba"); JoAnn M. Purser; Elizabeth Purser Tipton; Jerry W. Scarbrough; Jeff Ray; Jack Crews; John Fisher; and Steve Sather.

---

[1] Doc. #99.

[2] *Id.*

b. all documents and correspondence within your possession, control, or access evidencing or otherwise supporting any contention, allegation, or other statement that you have made to the 146th District Court of Bell County, Texas—under oath, in writing, or otherwise—pertaining to Cause No. 236,117-B pending in said state court ("state-court lawsuit") or this Adversary Proceeding.

c. all documents and correspondence within your possession, control, or access evidencing or otherwise supporting any contention, allegation, or other statement that you have made to the Bankruptcy Court of the Western District of Texas—under oath, in writing, or otherwise—pertaining to the state-court lawsuit or this Adversary Proceeding; and

d. all documents and correspondence within your possession, control, or access evidencing or otherwise supporting any contention, allegation, or other statement that you have made to the Third Court of Appeals of Texas, Austin Texas—under oath, in writing, or otherwise—pertaining to the state-court lawsuit or this Adversary Proceeding.[3]

4. On January 18, 2014, Mr. Richeson appeared for his Deposition; however, Mr. Richeson failed to fully comply with the Subpoena. Specifically, during his Deposition, Mr. Richeson testified that he had documents and recordings responsive to the Subpoena that he had not produced, including, but not limited to, recordings between him and Jerry Scarbrough; JoAnn Purser; and John Fisher.[4]

5. On January 30, 2014, the Purser Family filed their Motion to Compel against Mr. Richeson.[5] The Motion to Compel sought to have the Court: (1) compel Mr. Richeson to produce all documents and/or recordings responsive to the Subpoena in common media format; (2) order Mr. Richeson to pay the reasonable and necessary attorneys' fees caused by his non-compliance with the Subpoena; and (3)

---

[3] *Id.*

[4] Doc. #115-1, 66:23-67:23, 132:12-20, 159:3-21.

[5] Doc. #115.

Page 3

order Mr. Richeson to appear and show cause why he should not be held in con-

tempt.[6]

6.       On February 3, 2014, Mr. Richeson filed his *Response to Plaintiffs' Motion to Compel & Motion for Contempt & Motion for Sanctions*.[7]

7.       On February 3, 2014, Defendant Jerry Scarbrough filed his *Limited Response to Plaintiffs' Motion to Compel Production and Motion for Contempt*.[8]

8.       On February 4, 2014, the Purser Family filed *Plaintiffs' Reply to Shawn Richeson's Response (and Defendant's Limited Response) to Motion to Compel Production and Motion for Contempt*.[9]

9.       On February 4, 2014, a hearing was held on the Motion to Compel, and the Court instructed Mr. Richeson to comply with the Subpoena by close of business on Wednesday, February 5, 2014, by producing the requested documents and/or recordings in a usable form, such as a thumb drive, CD, or DVD. At that hearing, the Court also stated that it was considering excluding Mr. Richeson as a witness and sanctioning him for spoliation of evidence.

10.      On February 4, 2014, after the hearing on the Motion to Compel, Mr. Richeson sent Mr. White an email suggesting that Mr. White contact X/O Communications to attempt to obtain recordings of John Fisher, which were responsive to the Sub-

---

[6] *Id.*

[7] Doc. #123.

[8] Doc. #122.

[9] Doc. #125.

X-CENTRIC 026993

poena, if Mr. White was "genuinely interested in recovering those recordings and listening to them."[10]

11.     On February 4, 2014, after the hearing on the Motion to Compel, Mr. Richeson sent Mr. White a second email stating that he had recordings between Mr. Richeson's employee, Mike Messer, and JoAnn Purser and John Fisher; Mr. Richeson did not produce said recordings to Plaintiffs.[11]

12.     On February 6, 2014, Shawn Richeson filed his *Motion for Protective Order Nunc Pro Tunc Re: John Fisher – Audio Recordings.*[12]

13.     On February 10, 2014, the Purser Family filed *Plaintiffs' Follow-up Report to the Court Regarding Plaintiffs' Motion to Compel Production and Motion for Contempt*, informing the Court, in part, that Mr. Richeson failed to obey the Court's order to comply with the Subpoena by close of business on Wednesday, February 5, 2014.[13]

14.     On February 12, 2014, before beginning the second day of trial, a second hearing was held on Plaintiffs' Motion to Compel against Mr. Richeson.

15.     At the February 12, 2014 hearing, Mr. Richeson testified that he destroyed the audio recordings of John Fisher that were responsive to the Subpoena. In its instructions to Mr. Richeson on February 4, 2014, the Court required Mr. Richeson to deliver these items to Plaintiffs' counsel, Mr. White.

---

[10] Doc. #145-1, Exhibit B.

[11] Doc. #145, ¶2; Doc. #145-1, Exhibit C.

[12] Doc. #138.

[13] Doc. #145.

XCENTRIC 026994

16.     At the February 12, 2014 hearing, the Court ordered Mr. Richeson to pay the Purser Family their reasonable and necessary attorneys' fees of $4,700.00 due to his failure to comply with the Subpoena and the Court's February 4, 2014 order.

17.     Contrary to the assertions in his *Response to Plaintiffs' Motion to Compel & Motion for Contempt & Motion for Sanctions*, Mr. Richeson failed to comply with the Subpoena; Mr. Richeson also failed to comply with the Subpoena by the deadline provided to Mr. Richeson on February 4, 2014.

18.     Mr. Richeson's failures to comply with the Subpoena and the Court's instructions on February 4, 2014 include, but are not limited to, his destruction all audio recordings between him and John Fisher; his failure to produce recordings between him and Jerry Scarbrough; and his failure to produce recordings between him and JoAnn Purser.

19.     The John Fisher audio recordings destroyed by Mr. Richeson were responsive to the Subpoena. These recordings were destroyed by Mr. Richeson after the Subpoena was issued, and after Plaintiffs filed their Motion to Compel against Mr. Richeson.[14]

20.     The Purser Family incurred reasonable and necessary attorneys' fees of $4,700.00 as a result of Mr. Richeson's failure to comply with the Subpoena.

21.     Having been a plaintiff, defendant, or interested party in over sixty (60) lawsuits,[15] Mr. Richeson is aware of his duties under the rules governing discovery;

---

[14] *See* Doc. #99; Doc. #115.

[15] Doc. #115-3, Exhibit L.

XCENTRIC 026995

in any event, Mr. Richeson received a copy of Federal Rule of Civil Procedure 45(c), (d), and (e) when he was served with the Subpoena.

22.   The Court considered Mr. Richeson's testimony at the hearing on Plaintiffs' Motion to Compel, and finds that Mr. Richeson's testimony lacks credibility.

## CONCLUSIONS OF LAW

1.   This Court has inherent authority to issue sanctions pursuant to 11 U.S.C. § 105. These powers derived under § 105 are the same inherent powers discussed by the Supreme Court in *Chambers v. NASCO*, 501 U.S. 32 (1991).

2.   A bankruptcy court may issue any order—including a civil contempt order—necessary or appropriate to carry out the provisions of the Bankruptcy Code.[16] The sanctions against Mr. Richeson are appropriate under the Court's inherent powers.

3.   Pursuant to Federal Rule of Civil Procedure 45, Mr. Richeson was required to produce all documents, recordings, and/or other items responsive to the Subpoena.

4.   The Subpoena did not impose undue burden or expense on Mr. Richeson.

5.   Mr. Richeson's February 3, 2014 *Response to Plaintiffs Motion to Compel & Motion for Contempt & Motion for Sanctions* is without merit:

   a.   The Motion to Compel was not frivolous and was not brought in bad faith nor for an improper purpose, as alleged by Mr. Richeson;[17]

   b.   Sanctions against Mr. White and/or the Purser Family, as requested by Mr. Richeson,[18] are neither just nor appropriate;

---

[16] *See, e.g., Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997).

[17] *See* Doc. #123, ¶¶3, 4, 13, and 14.

XCENTRIC 026996

    c. Mr. Richeson's fear of criminal prosecution did not justify his decision to de-
stroy the recordings responsive to the Subpoena;[19]

    d. All documents, recordings, and/or other items responsive to the Subpoena
were not produced to Mr. White by Mr. Richeson;[20] and

    e. Elizabeth Purser Tipton and Mr. White did not engage in abusive tactics in re-
lation to the Motion to Compel.[21]

6.    Mr. Richeson's February 6, 2014 *Motion for Protective Order Nunc Pro Tunc Re:*

     *John Fisher – Audio Recordings* is also without merit.

7.    In determining reasonable attorneys' fees under the lodestar method, the reasona-

     ble number of hours is multiplied by the reasonable hourly rate, and then adjusted

     upward or downward based on the circumstances of the case and the *Johnson* fac-

     tors.[22]

8.    Applying the above factors, this Court finds that the attorneys' fees requested by

     the Purser Family fit within the lodestar for the number of hours an attorney

     would reasonably spend for the same type of work at the prevailing hourly rate for

     the community.

9.    Mr. Richeson failed to timely or properly object to producing the documents

     and/or recordings responsive to the Subpoena

---

[18] *See* Doc. #123, pages 5-7.

[19] *See* Doc. #123, page 4.

[20] *See* Doc. #123, ¶¶3, 9, and 17.

[21] *See* Doc. #123, pages 5-7.

[22] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the
skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to
the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations im-
posed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, repu-
tation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professio-
nal relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d
714, 717–19 (5th Cir. 1974).

XCENTRIC 026997

10.     Mr. Richeson willfully and intentionally failed to comply with the Subpoena.

11.     Mr. Richeson willfully and intentionally destroyed the John Fisher audio record-
        ings.

Any further relief sought in Plaintiffs' Motion to Compel which is not expressly granted

under this order is presently denied.

### End of Order ###


**Order Prepared by:**

HALEY & OLSON, P.C.

BY: /s/ Joshua J. White
        Joshua J. White
        Texas Bar No. 24048880
        510 North Valley Mills Drive, Suite 600
        Waco, Texas 76710
        Telephone: (254) 776-3336
        Facsimile: (254) 776-6823
        Email: jwhite@haleyolson.com
        *Attorney for Plaintiffs*

XPEDITION 026998