IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

XCENTRIC VENTURES, LLC, an
Arizona Limited Liability Company;
and ED MAGEDSON, an individual,

    Plaintiffs,

vs.                                No. C15-4008-DEO

BEN SMITH, in his individual
capacity as Sac County Attorney,    TRANSCRIPT OF
                                            PRELIMINARY INJUNCTION
    Defendant.                      HEARING
_____/

        The Hearing held before the Honorable Leonard T. Strand, Magistrate Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, May 1, 2015, commencing at 9:02 a.m.

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 5:15-cv-04008-LTS   Document 115-4   Filed 01/13/17   Page 1 of 5

1  is that after the undersigned recently disclosed to
2  representatives of Ripoff Report that John Brewington, a
3  licensed private investigatory in the state of Arizona, provided
4  law enforcement here in the state of Iowa with information
5  concerning the Ripoff Report, a Ripoff Report complaint about
6  the private investigator John Brewington which Ripoff Report has
7  described as a hit piece was made a featured report on 1.6
8  million web pages. Did I read that correctly?
9  A.   1.8 million. You said 1.6 but --
10 Q.   Oh, I'm sorry. That's my glasses.
11 A.   Yeah.
12 Q.   My eyes suck. Getting old sucks. It will come some day
13 for you too, but it sucks. Let me give you a preview. It
14 sucks. Apologize for the sideline.
15         THE COURT: It does beat the alternative, though.
16         MR. ROBBINS: At least I can see something. It's too
17 dark the other place.
18 Q.   But in any event, did you talk to Mr. Brewington and
19 provide him with that e-mail that you describe as a hit piece?
20 A.   I don't think I provided it to him. I think I may have
21 told him about it.
22 Q.   So you discussed the attorney-client information with this
23 investigator. Did you know his relationship with the Ripoff
24 Report?
25 A.   His being John Brewington?

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

```
 1  Q.  Yes.
 2  A.  I know more about it now than I did when I first came to
 3  know of John Brewington.
 4  Q.  Did you ever get the feeling that he was amicable or at
 5  least neutral concerning his feelings about the Ripoff Report?
 6  A.  No.
 7  Q.  And you were sharing with him attorney-client privilege
 8  from this person or this company that he had at least from your
 9  understanding an animus relationship.
10  A.  That's not -- that not accurate.
11  Q.  Okay.  So you were discussing with him this e-mail which is
12  marked attorney-client privilege with a man who at least
13  according to your perceptions was no friend of the Ripoff
14  Report.  Did I accurately state that?
15  A.  No, you did not.
16  Q.  Okay.  Let's break it down then.  You said that you had
17  discussed the contents of this e-mail with John Brewington.
18  A.  Yes.
19  Q.  Was that a correct statement?
20  A.  I believe that's correct.
21  Q.  Okay.  Did you discuss with him the contents of that
22  e-mail?
23  A.  I believe so, yes.
24  Q.  Okay.  That e-mail was labeled attorney-client privilege,
25  or it said it was a confidential communication; correct?
```

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 5:15-cv-04008-LTS   Document 115-4   Filed 01/13/17   Page 3 of 5

1  A.   I believe it said it was confidential.  I don't know
2  whether it said it was attorney-client privileged.
3  Q.   What other confidences do you believe applied under the
4  circumstances of a conversation between the lawyer for -- and
5  one of the executives of Xcentric?
6  A.   This communication was between Chief Operating Officer Adam
7  Kunz who's here today.  It was marked privileged.  It was a
8  discussion between COO Kunz and Ed Magedson about writing hit
9  pieces.  It was written from Adam Kunz's Gmail account or his
10 nonwork account to Ed Magedson's personal account.  Marked
11 confidential, it doesn't mean that it's privileged.  And writing
12 hit pieces is not privileged communications between attorney and
13 client.  That is . . .
14 Q.   You're aware that Adam Kunz is the in-house counsel for the
15 Ripoff Report; correct?
16 A.   I am.
17 Q.   Okay.  And this is a conversation between the chief counsel
18 and the CE -- or whatever you call Ed Magedson.  That's a
19 communication between them; correct?
20 A.   Yes.
21 Q.   Okay.
22 A.   Not all communi --
23 Q.   And you are sh -- and it even says confidential
24 communications.  Is there another confidential communication
25 category that would apply to communication between the in-house

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 5:15-cv-04008-LTS   Document 115-4   Filed 01/13/17   Page 4 of 5

page 105

```
 1  A.   Three minutes.
 2  Q.   Did he tell you that he refused to answer the question
 3  about whether or not he had prepared parts of that affidavit
 4  because he felt it would jeopardize the prosecution?
 5  A.   I think that he just said that he didn't say anything based
 6  upon his obligations as a PI.  I don't exactly recall what he
 7  said.  The purpose of my -- the main purpose of my communication
 8  with him was to obtain the full s -- the entire 60 Minute video
 9  because I knew that he had had that so . . .
10  Q.   Were you aware -- or strike that.
11       Were you aware that Ripoff Report checks have been
12  posted on the Internet with the account showing?
13  A.   I --
14  Q.   With the account number on their checks showing.
15  A.   Excuse me.  I'm not aware of that, sir.
16  Q.   Were you aware that attorney-client privileged information
17  has been posted on the Internet from other sources?
18  A.   If it's there, I'm not aware of that.
19  Q.   Did you provide financial information or financials to
20  Mr. Brewington?
21  A.   I allowed Mr. Brewington to review the bank records,
22  Xcentric Ventures' bank records.
23  Q.   And you do know -- and I think -- I know we've established
24  for Roberts, but you know that Brewington is also a person who
25  is trying to, if he can, injure if not fatally injure the Ripoff
```

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov
to purchase a complete copy of the transcript.*

Case 5:15-cv-04008-LTS   Document 115-4   Filed 01/13/17   Page 5 of 5